UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:19-cr-00378-JMS-MJD |
| | ) | |
| WILLIAM ERIC MEEK and | ) | - 01 |
| BOBBY LEE PEAVLER, | ) | - 02 |
| | ) | |
| *Defendants*. | ) | |

## ORDER

In this criminal case, Defendants William Meek and Bobby Peavler are charged with several fraud-related crimes stemming from their time as executives for a trucking company called Celadon Group, Inc. [Filing No. 106-1.] Pending before the Court are Mr. Peavler's Motion for an Order Relating to *Brady v. Maryland*, [Filing No. 113], and Mr. Meek's Motion to Compel Identification of Exculpatory Evidence and for Related Relief and Joinder of Motion of Bobby Peavler, [Filing No. 115]. The Court will first address the Government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and then discuss Defendants' Motions.

### I.
### DUE PROCESS PROTECTIONS ACT

The Due Process Protections Act of 2020 (the "DPPA") amends Rule 5(f) of the Federal Rules of Criminal Procedure and provides:

> In all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such order under applicable law. Each judicial council in which a district court is located shall promulgate a model order for [this] purpose ... that the court may use as it determines is appropriate.

Fed. R. Crim. P. 5(f).

This case was filed prior to the enactment of the DPPA, but pursuant to the DPPA, the Court reminds the Government of its obligations under *Brady*. *Brady* prohibits "the suppression by the prosecution of evidence favorable to an accused" because doing so is a violation of due process when the suppressed evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

Accordingly, the Court hereby notifies, reminds, and admonishes counsel of the Government's obligation to disclose favorable evidence to Defendants under *Brady* and its progeny, and **ORDERS** it to do so. Favorable evidence under *Brady* need have only some weight and includes both exculpatory and impeaching evidence. Failure to produce such evidence in a timely manner may result in sanctions, including, but not limited to, adverse jury instructions, dismissal of charges, and contempt proceedings.

## II.
### DISCOVERY MOTIONS

As noted above, both Defendants have filed discovery motions that are now pending before the Court. Mr. Peavler requests "an order requiring the government to (i) conduct a good faith search for exculpatory material under *Brady v. Maryland*, (ii) identify the *Brady* material of which it is aware, and (iii) identify whether it is withholding any *Brady* material for any reason." [Filing No. 113 at 1.] In his Motion, Mr. Meek requests "an order from this Court directing the Government to (a) specifically identify to the defense any exculpatory information, whether or not such information has already been produced to the defense; and (b) produce communications between the Government and the Securities and Exchange Commission ("SEC"), on the one hand, and Celadon or Danny Williams [an alleged co-conspirator], on the other." [Filing No. 115 at 1.] In addition, Mr. Meek joins in Mr. Peavler's Motion, [Filing No. 113], and states that "[f]airness demands that any relief granted to Mr. Peavler through his motion also be granted to Mr. Meek."

2

[Filing No. 115 at 3.] The Government responds to Mr. Peavler's Motion and Mr. Meek's Motion in a consolidated response. [Filing No. 120.] In the interest of clarity, the Court will discuss Defendants' general *Brady*-related arguments together, and then discuss each Defendant's arguments related to specific material.

### A. Motions for all *Brady* Materials

Mr. Peavler argues that his motion should be granted for three reasons. First, Mr. Peavler argues that "an order from the Court would provide an important safeguard against *Brady* violations that can occur in large document cases where exculpatory material can hide in plain sight." [Filing No. 114 at 15.] He argues that in cases like this one—where the defendant is confronted with millions of pages of documents, no contemporaneous civil lawsuits, limited resources, and no corporate assistance—courts have ordered the Government to conduct a reasonable search for *Brady* material and identify that *Brady* material to the defendant. [Filing No. 114 at 15-18 (citing *United States v. Saffarinia*, 424 F. Supp. 3d 46, 85 (D.D.C. 2020)).] Second, Mr. Peavler argues that the Government has consistently and erroneously "claimed that it was unaware of any material that qualifies as exculpatory *Brady* material," and such erroneous claims could "be made only if the government has failed to undertake any good faith effort to look for *Brady* material." [Filing No. 114 at 5; Filing No. 114 at 11.] In addition, Mr. Peavler argues that the Government inaccurately documented statements purportedly made by Mr. Peavler during a proffer interview with the Government. [Filing No. 114 at 13.] Mr. Peavler contends that these errors, and the Government's unwillingness to rectify them, raise further concerns that the Government "has not adequately searched for or considered the existence of *Brady* material," and suggest that a court order is required to secure the Government's compliance with its obligations. [Filing No. 114 at 20 (citing *United States v. Brissette*, 2020 WL 708034, at *9 (D. Mass. Feb. 12,

2020)).] Third, Mr. Peavler argues that "an order will protect the defendants from the harmful consequences that can occur following a *Brady* violation, which is particularly important when considering the resources necessary to complete the four-to-six week trial likely to occur in this case." [Filing No. 114 at 15.] Mr. Peavler maintains that requiring the Government to undertake a good faith search for *Brady* material provides a safeguard against the risk that Mr. Peavler could be wrongfully convicted or that a retrial would be necessary because the Government improperly withheld *Brady* material. [Filing No. 114 at 21-22 (citing *United States v. Paulus*, 952 F.3d 717, 728 (6th Cir. 2020) (the defendant—who is also represented by Mr. Peavler's counsel—was convicted after six-week jury trial, but the conviction was overturned because the Government withheld *Brady* material)).] Mr. Peavler concludes that the requested order is necessary because "*Brady* violations do not require bad faith on the part of the prosecutors," and "it can be too easy even for the most conscientious prosecutors to violate *Brady*, particularly in a high-volume document case like this one." [Filing No. 114 at 24-25.]

Mr. Meek raises many of the same arguments as Mr. Peavler, and he also argues that "[u]nder *Brady* and [Federal Rule of Criminal Procedure] 16, the Government is obligated to identify to Mr. Meek any exculpatory information of which it is aware," and that the Government has failed to do so. [Filing No. 116 at 13.] Mr. Meek states that he has asked the Government whether it considers certain categories of information to be exculpatory, but the Government has not responded. [Filing No. 116 at 14-15.] He argues that he "cannot reasonably evaluate the Government's approach to identifying *Brady* material when the Government refuses to explain what types of information it would consider exculpatory." [Filing No. 116 at 15.] In addition, he argues that "it is not enough that the Government has produced millions of pages of documents";

rather, "the Government must specifically identify them for Mr. Meek." [Filing No. 116 at 16 (citing *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998)).]

In response to Defendants' Motions, the Government argues that it "has produced discovery that is searchable and accessible to the defendants the same way it is searchable and accessible to the government." [Filing No. 120 at 1.] According to the Government, it has erred on the side of disclosure, not on the side of suppression, and it has conducted discovery in good faith. [Filing No. 120 at 9; Filing No. 120 at 14-15.] The Government argues that *Brady* does not require the Government to "search for and specifically identify potentially exculpatory evidence within discovery already produced to Defendants," and contends that "every court of appeals to have considered" requests like those of Defendants "has rejected them." [Filing No. 120 at 8-11 (citing *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011); *United States v. Yi*, 2020 WL 496159 (4th Cir. Jan. 30, 2020); *Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010); *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005)).] Moreover, the Government contends that the cases cited by Defendants are distinguishable. [Filing No. 120 at 12.] According to the Government, in *Blankenship*, *Salyer*, and *Hsia*, the discovery was produced to the defendants "in a less user-friendly format than here." [Filing No. 120 at 13.] The Government emphasizes that in this case, unlike in *Blankenship*, *Salyer*, and *Hsia*, it took additional steps to assist Defendants in managing the materials, such as producing the material in an electronic and searchable format with indices. [Filing No. 120 at 13.] The Government argues that *Saffarinia* is distinguishable because unlike the defendants in *Saffarinia*, Defendants here were executives of a publicly traded corporation and are represented by talented counsel from large, well-respected firms who are not handling the case *pro bono*.

5

[Filing No. 120 at 14.] And, unlike in *Saffarinia*, the Government maintains that "time constraints" are not an issue, as Defendants have had access to the documents for nearly a year, and by the time this case goes to trial, they will have had the documents for sixteen months. [Filing No. 120 at 14.] The Government argues that Defendants' request is "untenable" and essentially amounts to a request that the government "conduct the defense's investigation for it," which it has no duty to do. [Filing No. 120 at 17 (citing *Gray*, 648 F.3d at 567).] The Government further argues that "Mr. Peavler's citation to *Paulus*, 952 F.3d 717, is wholly inapposite to the instant motions to compel," because it involved unique circumstances that are not present in this case. [Filing No. 120 at 14.] Finally, the Government concludes that it has fulfilled its discovery obligations in good faith and Defendants "are equally if not more capable" of conducting the requested searches themselves. [Filing No. 120 at 20.]

     Mr. Peavler replies by first clarifying that he is not arguing that the Government has acted in bad faith with respect to its discovery obligations, that he is not criticizing the Government for producing millions of pages of documents, and that he is not seeking an order that would require "the government to comb through millions of pages of already-produced documents in search of exculpatory material." [Filing No. 121 at 1-2.] Instead, Mr. Peavler states, he is seeking narrower relief: that the Government conduct a reasonable search for exculpatory material that has not been disclosed to Defendants; that the Government identify exculpatory material of which it is aware; and that the Government identify any exculpatory material that it is withholding for any reason. [Filing No. 121 at 2.] According to Mr. Peavler, none of his requests should impose a substantial burden on the Government. [Filing No. 121 at 5.] Mr. Peavler argues that the Government has failed to recognize "obvious exculpatory material that undercuts its central theory of its case," and has refused to recognize significant incorrect information in an interview memorandum despite

being notified of the errors. [Filing No. 121 at 8.] Mr. Peavler also argues that even though the Government has produced the documents in a user-friendly and searchable format, other courts have concluded that doing so was not enough and ordered the Government to identify *Brady* material. [Filing No. 121 at 13 (citing *Blankenship*, 2015 WL 3687864, at *4).] He argues that this Court should do the same, which "would remove any temptation to include exculpatory material in a large production in the hopes that it is not found or used." [Filing No. 121 at 15 (citing *Saffarinia*, 424 F. Supp. at 85; *Blankenship*, 2015 WL 3687864, at *4).] Finally, Mr. Peavler argues that *Paulus* "is not irrelevant, because it shows how easily *Brady* violations can occur without appropriate protections and how those violations can harm the administration of justice in ways that cannot be undone." [Filing No. 121 at 16.] Accordingly, he argues, "[t]o prevent that kind of problem from arising in this case, the government should be required by court order to identify if it is withholding any *Brady* material for any reason." [Filing No. 121 at 17.]

In his reply, Mr. Meek also clarifies that he "wants only for the government to identify any exculpatory evidence ***of which it is aware***," and he adds that he is not "demanding that the government undertake any new search for exculpatory material." [Filing No. 123 at 2 (emphasis in original).] In support of that narrowed request, Mr. Meek argues that the Government cannot fulfill its *Brady* obligations by simply producing millions of pages of documents, even if those millions of pages contain the exculpatory evidence. [Filing No. 123 at 4.] Rather, according to Mr. Meek, to satisfy its *Brady* obligations, the Government must "specifically identify any exculpatory evidence or information of which it is aware." [Filing No. 123 at 4.] Mr. Meek argues that he is an individual defendant who does not benefit from parallel civil litigation or have access to corporate assistance to search through the millions of pages of documents, while the Government, on the other hand, has the assistance of multiple federal agencies, a corporation, and

7

an alleged co-conspirator, and has investigated this case for years. [Filing No. 123 at 7 (citing *Saffarinia*, 424 F. Supp. 3d at 88).] Accordingly, Mr. Meek argues, the facts of this case mirror cases in which courts have issued orders similar to the order he requests. [Filing No. 123 at 8-9 (citing *Blankenship*, 2015 WL 3687864, at *4, *6; *Salyer*, 2010 WL 3036444, at *4; *Hsia*, 24 F. Supp. 2d at 29-30).] Mr. Meek further argues that "it is of no consequence that there may be documents Mr. Meek views as exculpatory but the government does not." [Filing No. 123 at 10.] Instead, he maintains that the prosecution team is "capable of recognizing evidence that is exculpatory on its face, and it must identify such evidence to the defense," as Mr. Meek "is entitled to *all* exculpatory evidence." [Filing No. 123 at 10 (emphasis original).]

Under *Brady v. Maryland,* the Government has a duty to produce evidence favorable to the accused when "the evidence is material either to guilt or punishment." 373 U.S. at 87. Evidence is "material" in the *Brady* context "if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *United States v. Clark*, 935 F.3d 558, 567 (7th Cir. 2019) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)). In addition, under *Giglio v. United States,* 405 U.S. 150 (1972), the *Brady* duty extends to impeachment evidence. The parties agree that whether to issue the order(s) requested by Mr. Peavler and Mr. Meek is within the Court's discretion. [Filing No. 114 at 4.] *See United States v. Delatorre*, 438 F. Supp. 2d 892, 900 (N.D. Ill. 2006) ("District courts have broad discretion with regard to discovery motions in criminal cases."), *aff'd sub nom. United States v. Benabe*, 436 F. App'x 639 (7th Cir. 2011).

As a general rule, the Government "is 'under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence.'" *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) (alterations original) (quoting *Skilling*, 554 F.3d at 576).

8

*See also United States v. Mmahat,* 106 F.3d 89, 94 (5th Cir. 1997) ("[T]here is no authority for the proposition that the government's *Brady* obligations require it to point the defense to specific documents within a larger mass of material that it has already turned over."), *overruled in part on other grounds by United States v. Estate of Parsons,* 367 F.3d 409 (5th Cir. 2004) (en banc). That is, *Brady* does not impose an obligation "on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed." *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005).

Defendants have identified several cases in which other district courts have departed from the general rule and ordered the Government to search for and identify *Brady* material within a large mass of disclosed documents. In particular, Defendants point to *Saffarinia*, 424 F. Supp. 3d at 46, and urge the Court to follow the District Court for the District of Columbia. In *Saffarinia*, the Government produced more than one million records consisting of 3.5 million pages. *Id.* at 82. The court, relying heavily on *Salyer*, 2010 WL 3036444, concluded that "the government's *Brady* obligations require it to identify any known *Brady* material to the extent that the government knows of any such material in its production of approximately 3.5 million pages of documents." *Saffarinia*, 424 F. Supp. 3d at 86. The court emphasized that Mr. Saffarinia was "an individual defendant who neither ha[d] the benefit of parallel civil litigation, nor access to voluntary corporate assistance to sift through the massive amounts of documents within the government's voluminous production"; that Mr. Saffarinia's counsel was handling the case *pro bono* with "time constraints" and "limited financial resources"; and "that the government—assisted by at least two federal prosecutors and several federal agents from at least two law enforcement agencies—. . . had the luxury of reviewing this material on a rolling basis over the course of its three-year investigation." *Id.* at 88 (citing *Salyer*, 2010 WL 3036444, at *3-*7). The *Saffarinia* court also noted that its

9

decision was consistent with several other district court cases. *See Id.* at 86 (citing *Hsia,* 24 F. Supp. 2d at 29 ("The government cannot meet its *Brady* obligations by providing Ms. Hsia with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack. To the extent that the government knows of any documents or statements that constitute *Brady* material, it must identify that material to Ms. Hsia."); *Blankenship*, 2015 WL 3687864, at *6 ("The Court finds that the United States should specifically designate any known *Brady* material as such and disclose the same to defense counsel. In other words, without more, the United States does not comply with the requirement of *Brady* by merely including all known *Brady* material within the four million plus pages of discovery.").

As stated above, generally the Government is not obligated to specifically identify *Brady* material within a mass of discovery to Defendants. *Skilling*, 554 F.3d at 576. Operating against that backdrop, Defendants have not demonstrated that a departure from that general rule, in favor of the approach adopted in *Saffarinia*, *Salyer*, *Hsia*, and *Blankenship*, is warranted.

As an initial matter, the Government produced voluminous discovery, which reduces the risk of exculpatory material being suppressed. Moreover, the Government produced the documents in a user-friendly, searchable, and indexed format. Although that fact does not itself end the inquiry, *see Skilling*, 554 F.3d at 577, it reduces the need for a departure from the general rule, *see id.*; *United States v. Rubin/Chambers*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) (holding, in a case where the Government produced voluminous discovery in a searchable format, that "the Government is under no general obligation to identify or sort *Brady* material within even an extremely voluminous disclosure, and Defendants have failed to persuade the Court that an exception to this general rule is warranted here"); *United States v. Ohle,* 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011) ("[T]he Government, to facilitate review of the documents, provided

defense counsel with an electronically searchable Concordance database. Both the Government and defense counsel had equal access to this database. Thus, the defendants were just as likely to uncover the purportedly exculpatory evidence as was the Government."). *See also United States v. Collins*, 2012 WL 3537814, at *7 (N.D. Cal. March 16, 2012) ("[T]he government is urged to heed the instruction of any number of cases on the subject that a production of a searchable database can avoid subsequent challenges under Rule 16, *Brady,* and *Giglio.*"). In addition, there is no indication that the Government deliberately concealed or buried any exculpatory evidence in the information it turned over to the defense. *See Warshak*, 631 F.3d at 298 ("Finally, there is no indication that the government deliberately concealed any exculpatory evidence in the information it turned over to the defense. Consequently, the government has not "abdicated" its duties under *Brady*.").

Moreover, the factors identified as relevant in the district court cases cited by Defendants also demonstrate that a departure from the general rule is inappropriate here. *See Saffarinia*, 424 F. Supp. 3d at 46; *Salyer*, 2010 WL 3036444, at *3-*7. In this case, both Defendants are sophisticated and formerly high-level executives of a publicly traded company. Each Defendant is represented by experienced and talented counsel from notable law firms across the country. Both Defendants have vigorously litigated this case, with each filing several motions and lengthy briefs on various issues. *See Warshak*, 631 F.3d at 298. While the Court is by no means criticizing Defendants for doing so—indeed, criminal defendants are encouraged to zealously defend themselves within the bounds of the Constitution—Defendants cannot pursue such an aggressive defense strategy and simultaneously claim that they have very limited resources. Finally, as the Government points out, Defendants have had access to these documents for more than a year, and they have them (and have had them) in the same user-friendly, searchable, and indexed format as

the Government. *Ohle,* 2011 WL 651849, at *4. In sum, the circumstances prompting other district courts to grant similar motions are not present in this case.

Finally, aside from the burden that the requested order would impose on the Government, Defendants are in a better position to determine what evidence they believe is exculpatory and will help in their defense. Defendants do not generally allege that the Government has withheld exculpatory material. Rather, they simply want to know what specific material the Government believes will help them. To order the Government to go beyond simply producing *Brady* material and order it to identify or label *already produced* material as covered by *Brady*—and by omission, identify non-*Brady* material—only invites future disputes as to whether the Government did an adequate job of identifying such material or characterized the material consistent with the Defendants' view of it.

The Seventh Circuit has made clear that "[t]he government is not 'obliged to sift fastidiously' through millions of pages (whether paper or electronic)," nor is it required to direct Defendants to exculpatory material of which it is unaware in already disclosed evidence. *Gray*, 648 F.3d at 567. The cases on which Defendants rely are distinguishable from the facts of this case, and, even if they were not distinguishable, they are from district courts outside of the Seventh Circuit and therefore not precedential. In sum, the Court discerns no legal authority that would impose upon the Government the additional burden sought by Defendants, and Defendants' Motions, [Filing No. 113; Filing No. 115], are **DENIED** to the extent they seek an order requiring the Government to search for and identify *Brady* material contained within already produced documents.

However, to the extent the Government is withholding material that it knows falls within *Brady*'s scope, the Government must generally identify what that material is and when it intends

12

to produce that material to Defendants. If the Government is withholding exculpatory evidence that it does not intend to produce, it must state why. To that extent, Defendants' motions are granted.

### B. Motions for Specific *Brady* Material

#### 1. *Mr. Peavler's request related to interview notes*

As noted briefly above, Mr. Peavler argues that the Government inaccurately documented statements he made during a proffer interview with the Government. [Filing No. 114 at 13.] According to Mr. Peavler, because of the inaccuracies, "relying on the government's word alone does not provide anyone with sufficient safeguards." [Filing No. 114 at 4.]

The Government responds that Mr. Peavler's allegation that the Government inaccurately summarized his statements is unfounded, and even if it was true, would not support Mr. Peavler's requested relief. [Filing No. 120 at 16 n.4.] Instead, the Government assures Mr. Peavler that it will "review the agent's notes for any material discrepancies with the report, and if they exist, will make them available to the defense." [Filing No. 120 at 16 n.4.]

Mr. Peavler replies that the Government "did not explain why it has not checked the agent's notes for 'any material discrepancies'" already; "did not explain why it has not checked with the prosecutors and the agents who attended the interview for their own recollections or why it allowed their memories to potentially fade over the last nine months"; and "did not explain how it could even issue a summary denial in its brief without checking the notes of the agents." [Filing. No. 121 at 12.] Mr. Peavler argues that these "are the kinds of issues" that justify an order requiring the Government to preserve any notes from his interview and to undertake a reasonable search for exculpatory material that has not been disclosed. [Filing No. 121 at 12-13.]

In essence, Mr. Peavler argues that because the Government has allegedly inaccurately summarized his statements, he cannot be sure that the Government has sufficiently searched for or considered the possibility of *Brady* material in other interviews. [Filing No. 114 at 20.] While the Court does not agree that alleged errors in the memorandum summarizing Mr. Peavler's proffer interview warrant the broad order he requests, the Court does find that some action is necessary. Accordingly, the Court **ORDERS** that any notes taken during or relating to Mr. Peavler's proffer interview shall be reported to the Court and the Defendants in list form and preserved, regardless of who made the notes. The Government shall also identify whether the Government is claiming any such notes are privileged or otherwise protected from disclosure. In addition, the Court **ORDERS** the Government to produce to Defendants any non-privileged notes or summaries of Mr. Peavler's proffer interview with the Government. *See Giglio*, 405 U.S. 150. Moreover, the Court cautions the Government that if the other notes or materials show that the Government's memorandum contained material inaccuracies and led to the withholding of *Brady* material, the Court may require additional action to ensure that other *Brady* material has not been inadvertently withheld.

### 2. Mr. Meek's request related to communications between the Government and SEC on one hand and Celadon and Mr. Williams on the other hand

Mr. Meek requests an order directing the Government to "produce communications between the Government and [the SEC] on the one hand, and Celadon or Danny Williams, on the other." [Filing No. 115 at 1.] Mr. Meek argues that "although such documents are likely inadmissible in the Government's case in chief, they may contain material relevant to the defense under Rule 16 and constitute *Brady* materials." [Filing No. 116 at 16.] He argues that communications between the Government or the SEC and "these relevant parties are not privileged, and they are potentially highly relevant to the defense, as the Government appears to

be basing a large portion of its case on those third parties' accounts of the facts." [Filing No. 116 at 17.] Mr. Meek maintains that he is entitled to these documents and argues that the Government "has provided no justification for withholding these materials from Mr. Meek." [Filing No. 116 at 18.] Mr. Meek concludes that an order requiring the requested disclosures "is essential to preserving the integrity of the trial and ensuring that Mr. Meek has a fair opportunity to prove his innocence." [Filing No. 116 at 19.]

The Government responds that an order compelling the Government to produce communications between the Government, the SEC, Celadon, and Danny Williams is unnecessary for several reasons. First, the Government argues, "to the extent Mr. Meek's request seeks substantive communications between Mr. Williams himself or employees of Celadon regarding the subject matter of the Indictment," Mr. Meek either has those communications or will have them sometime in the future. [Filing No. 120 at 21.] The Government states that it has already produced the interview summaries in its possession as of June 2020, and that it will continue to produce new interview summaries in advance of trial consistent with its obligations. [Filing No. 120 at 21.] Second, the Government argues that "to the extent Mr. Meek's request seeks agreements reached between the government and potential witnesses that may be discoverable under *Giglio*, the government is aware of its obligations and will produce the pertinent agreements in advance of trial." [Filing No. 120 at 21.] Similarly, the Government assures the Court and Defendants that it will review prior to trial its communications with counsel for Celadon and Mr. Williams for "*Brady*/*Giglio* materials." [Filing No. 120 at 21.] Last, the Government argues that "to the extent Mr. Meek's request calls for the wholesale production of all communications between the government and counsel for Celadon and Mr. Williams, the Court should deny it." [Filing No. 120 at 21.] It argues that such broad requests for non-discoverable and inadmissible

15

communications have been consistently denied. [Filing No. 120 at 22.] The Government again states that it is "cognizant of its obligations under *Giglio*," and assures the Court and Defendants that they already have, or will have before trial, copies of plea agreements and similar agreements for all testifying witnesses. [Filing No. 120 at 23.]

In reply, Mr. Meek reiterates that the requested communications "are potentially highly relevant to the defense, as the government appears to be basing a large portion of its case on those parties' accounts of the facts." [Filing No. 123 at 15.] He argues that despite the Government's assertion that it will review and produce some additional materials in the future, "[b]ecause the government has apparently failed to identify clearly exculpatory evidence in one set of documents, Mr. Meek should not be forced to rely on" the Government's review of these communications. [Filing No. 123 at 14-15.]

Unlike his more general request, Mr. Meek's narrow request is more reasonable. The Government has indicated that it will produce at least some of the specifically requested communications in the future. In light of the concerns raised by Defendants, as well as Congress's renewed commitment to emphasize the Government's obligations to disclose potentially exculpatory material as evidenced by the bipartisan DPPA, the Court **ORDERS** the Government to identify what communications it intends to produce and when it intends to produce them. In addition, if there are relevant communications between the Government and SEC on one hand and Celadon or Mr. Williams on the other hand that the Government does not intend to produce, it shall generally identify those communications and state why it does not intend to produce them.

## III.
### CONCLUSION

Consistent with the foregoing, the Court makes the following rulings:

1. Pursuant to Federal Rule of Criminal Procedure 5(f), as amended by the DPPA, the Court reminds the Government of its obligation to disclose favorable evidence to Defendants under *Brady* and its progeny, and **ORDERS** it to do so.

2. Mr. Peavler's Motion for an Order Relating to *Brady v. Maryland*, [113], is **GRANTED IN PART** and **DENIED IN PART** to the extent that:

   - Mr. Peavler's request for an order requiring the Government to conduct a good faith search for exculpatory material under *Brady v. Maryland* is **DENIED**;

   - Mr. Peavler's request for an order requiring the Government to identify the *Brady* material of which it is aware is **DENIED**; and

   - Mr. Peavler's request for an order requiring the Government to identify whether it is withholding any exculpatory material for any reason is **GRANTED** as follows:

     i. To the extent the Government is aware of any exculpatory material that it has not yet produced, it shall generally identify that material and state when it will produce that material to Defendants; and

     ii. To the extent the Government is aware of any exculpatory material that it has not produced and does not intend to produce in the future, it shall generally identify that material and state why the material will not be produced.

3. Mr. Meek's Motion to Compel Identification of Exculpatory Evidence and for Related Relief and Joinder of Motion of Bobby Peavler, [115], is **GRANTED IN PART** and **DENIED IN PART** to the extent that:

   - Mr. Meek's request for an order directing the Government to specifically identify to the defense any exculpatory information is **DENIED**; and

   - Mr. Meek's request for an order directing the Government to produce communications between the Government and the SEC on the one hand, and Celadon or Danny Williams on the other hand is **GRANTED** as follows:

     i. The Government shall generally identify to the Court the communications between the Government and the SEC on the one hand, and Celadon and Danny Williams on the other hand that it intends to produce and state when it will produce that material; and

17

      ii. The Government shall generally identify to the Court the communications between the Government and the SEC on the one hand, and Celadon and Danny Williams on the other hand that it does not intend to produce and state why the material will not be produced.

4. In addition, the Court **ORDERS** as follows:

- The Government shall preserve all notes taken during or relating to Mr. Peavler's proffer interview, regardless of who made the notes; and it shall file a report containing a list of those notes and stating whether the Government claims the notes are privileged or otherwise protected from disclosure.

- The Government shall produce to Defendants all notes taken during or relating to Mr. Peavler's proffer interview that are not privileged or otherwise protected from disclosure.

5. The Government must comply with its obligations under this Order by **April 9, 2021**.

Date: 3/19/2021

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**