UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-00378-JMS-MJD |
| | ) | |
| WILLIAM ERIC MEEK and | ) | -01 |
| BOBBY LEE PEAVLER, | ) | -02 |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

## ORDER

Defendant Bobby Lee Peavler is charged with several crimes related to his alleged conduct while serving as the Chief Financial Officer of Celadon Group, Inc. [*See* Filing No. 32.] During the course of the Government's investigation, Mr. Peavler participated in a proffer meeting with the Government. The Government has filed a Motion in *Limine* seeking a pretrial determination as to the admissibility at trial of statements made by Mr. Peavler during the proffer meeting. [Filing No. 164.] After thorough briefing by the parties and several hearings on the matter, the Government's Motion is now ripe for the Court's decision.

### I.
### STANDARD OF REVIEW[1]

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). "The court must conduct any hearing on a preliminary question so that the jury cannot hear it if . . . the hearing involves the admissibility of a confession . . . [or] justice so requires." Fed. R. Evid. 104(c)(1), (3). "The government bears the

---

[1] In response to the Government's request for clarification, [Filing No. 224], the standard outlined in this section was provided to the parties as the legal framework the Court would use for determining the admissibility of Mr. Peavler's proffer statement, [Filing No. 227 at 2-4].

burden of demonstrating the admissibility of a confession," *United States v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008), and it must do so by a preponderance of the evidence, *see Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (recognizing that the Supreme Court has "traditionally required that [admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof"). In determining questions of admissibility, the Court acts as the factfinder and can consider witness credibility. *See, e.g., United States v. Thompson*, 496 F.3d 807, 809 (7th Cir. 2007) ("Because the resolution of a motion to suppress is a fact-specific inquiry, we give deference to credibility determinations of the district court judge, who had the opportunity to listen to testimony and observe the witnesses at the suppression hearing.").

## II.
### BACKGROUND[2]

In August of 2019, Mr. Peavler signed a proffer agreement ("the Proffer Agreement") and participated in a proffer interview ("the Proffer Interview") with the Government. [*See* Filing No. 164-1.] At the Proffer Interview, Department of Justice Attorneys L. Rush Atkinson and Kyle Maurer; Assistant United States Attorney Nick Linder; FBI Special Agents Victoria Madtson and Joseph Weston; and United States Postal Inspector Anna Hallstrom were present on behalf of the Government. [Filing No. 164 at 2; Filing No. 203 at 4.] Mr. Peavler was represented by three attorneys: Sergio Acosta, Douglas Paul, and Sarah Wang. [Filing No. 164 at 2; Filing No. 203 at 4.] The Proffer Agreement provided that statements made by Mr. Peavler during the interview would generally not be admissible in a criminal prosecution against him, except that "[i]n any proceeding, including sentencing, the government may use [Mr. Peavler's]

---

[2] The facts summarized in this section are gleaned from the parties' filings as well as the testimony and evidence presented at the evidentiary hearings on the Government's Motion *in Limine*, which took place on February 2 and February 7, 2022.

statements and any information provided by [Mr. Peavler] during or in connection with the meeting to cross-examine [Mr. Peavler], to rebut any evidence or arguments offered on [Mr. Peavler's] behalf, or to address any issues or questions raised by a court on its own initiative" ("the Admissibility Provision").  [Filing No. 164-1 at 2.]

The Proffer Interview was not recorded or transcribed.  However, Special Agent Madtson took handwritten notes, which she later used to write an FD-302 Memorandum purportedly memorializing the contents of the Proffer Interview ("the FD-302").  [*See* Filing No. 164-2.]  In addition, Ms. Wang typed what she characterizes as "transcript-style" notes, including both questions and answers, and later used those notes to draft a memorandum purportedly memorializing the contents of the Proffer Interview.

The day after the Proffer Interview, representatives for the Government and for Mr. Peavler spoke on the telephone to discuss the Proffer Interview.  During this conversation, Ms. Wang again typed what she calls "transcript-style" notes.

At various times during this lawsuit, Mr. Peavler has asserted that the FD-302 does not accurately reflect what he said during the Proffer Interview.  [*See*, *e.g.*, Filing No. 113-8 (letter from Mr. Peavler's counsel to Mr. Atkinson, Mr. Mauer, and Mr. Linder, expressing "deep concerns about the accuracy" of the FD-302); Filing No. 114 at 13-14 (brief in support of Mr. Peavler's "Motion for an Order Related to *Brady v. Maryland*" arguing that the Government did not accurately record the contents of the Proffer Interview).]

In December 2021, the Government filed its Motion in *Limine,* seeking "a ruling from the Court that, consistent with the [P]roffer [A]greement, [the Government] be permitted to cross-examine [Mr.] Peavler with his statements [made during the Proffer Interview], and that the government be permitted to introduce any statements to rebut any evidence or arguments offered

[at trial] on his behalf." [Filing No. 164 at 1.] In response to the Motion in *Limine*, Mr. Peavler again asserted that the FD-302 was not an accurate representation of the statements that he made during the Proffer Interview. [Filing No. 203 at 2-3.] At a final pretrial conference held on January 14, 2022, the Court concluded that before it could rule on the Government's Motion in *Limine*, the Court must first make preliminary factual findings concerning what was said by Mr. Peavler during the Proffer Interview. To facilitate such factfinding, the Court held a two-part evidentiary hearing on February 2 and February 7, 2022, during which Special Agent Madtson and Ms. Wang testified and the parties presented evidence concerning the contents of Mr. Peavler's proffer statements. [*See* Filing No. 233; Filing No. 234.] No party objected to the Court's proposed procedures for resolving the issues presented in the Motion in *Limine*.

At the February 2 hearing, the Government advised that it did not intend to introduce the entire contents of the FD-302. It therefore limited its questioning of Special Agent Madtson to the specific statements allegedly made during the Proffer Interview that it might seek to introduce at trial. At the February 7, 2022 evidentiary hearing, Mr. Peavler introduced redacted versions of Ms. Wang's "transcript-style" notes of the Proffer Interview (Defendants' Exhibit 8), Ms. Wang's memorandum of the Proffer Interview (Defendant's Exhibit 9), and Ms. Wang's "transcript-style" notes summarizing the subsequent telephone conversation (Defendant's Exhibit 10). Mr. Peavler limited his presentation to evidence responding to the specific statements that the Government had identified on February 2. [*See* Filing No. 234 at 1-2.]

In response to a Motion to Compel subsequently filed by the Government, [Filing No. 235], the Court conducted an *in camera* review of unredacted versions of Defendant's Exhibits 8, 9, and 10, and concluded that further un-redaction of Defendant's Exhibit 8 (Ms. Wang's "transcript-style" notes taken during the Proffer Interview) was warranted pursuant to Federal

Rule of Criminal Procedure 26.2, [Filing No. 249].  The Court provided an updated, further

unredacted version of those notes ("the Court's Redaction") to the parties.  [Filing No. 249-1.]

The Court ordered the Government to submit a document listing the specific proffer

statements that it believes were made by Mr. Peavler during the Proffer Interview, based on

Special Agent Madtson's testimony, and that it may potentially seek to introduce at trial pursuant

to the Proffer Agreement.  [Filing No. 249 at 13.]  The Government made its submission, [Filing

No. 257; Filing No. 257-1], and, pursuant to the Court's earlier instruction, [Filing No. 249 at

13], Mr. Peavler submitted a response indicating which of the Government's statements he

disputes and the basis for any dispute, [Filing No. 264].  On July 12, 2022, a hearing was held, at

which the Court heard argument from the Government and from Mr. Peavler concerning the

Government's Motion in *Limine* and the contents of the proffer statement.  [*See* Filing No. 267.]

### III.
#### DISCUSSION

There is no dispute that Mr. Peavler gave a proffer statement or that the Proffer

Agreement, including the Admissibility Provision, is generally enforceable and will permit the

Government to introduce any of Mr. Peavler's proffer statements at trial if his trial presentation

contradicts anything he said during the Proffer Interview.  *See United States v. Krilich*, 159 F.3d

1020, 1024-26 (7th Cir. 1998) (discussing the admission of statements made pursuant to a similar

proffer agreement).  The parties also do not dispute that, pursuant to the Admissibility Provision

of the Proffer Agreement, the Court will be left to decide during trial if any evidence or argument

presented by Mr. Peavler contradicts any of the statements he made during the Proffer Interview

such that the proffer statements may be admitted for purposes of cross-examination or rebuttal.

However, before the Court can determine whether the Admissibility Provision has been triggered

by a contradiction at trial, the Court must first determine what Mr. Peavler actually said during the Proffer Interview.  *See* Fed. R. Evid. 104(a).

The Government argues that it has proven by a preponderance of the evidence each of the 41 statements listed in its filings.  [*See* Filing No. 257; Filing No. 257-1.]  In support of this contention, the Government relies on the testimony of Special Agent Madtson, as well as her handwritten notes and her FD-302.  Special Agent Madtson has undergone significant training as an FBI Agent and is experienced in interviewing witnesses and suspects and preparing FD-302 reports, specifically in cases involving white collar and financial crimes.  [*See* Filing No. 257 at 7-8 (outlining Special Agent's background and experience).]  Despite her background and experience, however, she proved to be a questionable witness in this case for several reasons.

First, Special Agent Madtson's contemporaneous, handwritten notes of the Proffer Interview are conclusory.  They do not capture the questions that were asked, the precise answers that were given, or which individual said what.  Given that the questions asked by the Government's counsel were often longer and more complex than the answers provided by Mr. Peavler, the failure to record the contents of the Proffer Interview in a question-and-answer format is problematic and, in some instances, misleading.  Special Agent Madtson's FD-302 report, which was based in part on her handwritten notes and in part on her recollection of the Proffer Interview, similarly does not utilize a question-and-answer format, and instead represents a summary of her version of what she believes Mr. Peavler said during the Proffer Interview. Such a summary is not a proper substitute for Mr. Peavler's actual words.

Second, Special Agent Madtson appears to have misattributed statements made by other individuals to Mr. Peavler.  For example, Special Agent Madtson testified that Mr. Peavler acknowledged that certain representations he made to a bank were deceptive.  Ms. Wang's

testimony, on the other hand, is that Mr. Peavler's lawyer, Sergio Acosta, stated that Mr. Peavler

understood that what was provided to the bank was deceptive.  Special Agent Madtson testified

that she had a "vivid memory" of Government's counsel, Nick Linder, asking Mr. Peavler to

confirm Mr. Acosta's statement, and of Mr. Peavler doing so.  Ms. Wang did not recall this

alleged follow-up occurring, and did not include it in her "transcript-style" notes.  Furthermore,

Mr. Linder's notes from the Proffer Interview—which are extremely limited and comprise only a

few lines—state, "Sergio: Bank Covenants were deceptive."[3]  In addition—and perhaps most

significantly—Ms. Wang's "transcript-style" notes of the post-Proffer-Interview phone call

between Government counsel and Mr. Peavler's counsel indicate that Mr. Linder made the

following statement during that call:

> So Bucket #2 was the 9/30 transaction, lying to the banks, messing with the
> covenants through cash flow management, and then not reporting on the 10Q.
> [Mr. Peavler] denied wrongdoing really strenuously all the way through, and then
> we ended and broke for lunch.  It was clear you had a tough discussion over lunch
> and we appreciate your telling us where he's coming from – that yeah, that
> transaction was deceptive – but you'll prob[ably] note this wasn't an attorney
> proffer, this was his – *we didn't turn to him and say well what do you have to say
> about that?*  I wanted to ask him, but frankly at that point my expectations were
> so shattered that I didn't have any idea what he would say at that point.  The fact
> that they were deceptive isn't relevant; it's did you intend them to be deceptive.
> He wasn't prepared to answer that I don't think.

[Defendant's Exhibit 10 at 1 (emphasis added).]  The Government did not challenge the accuracy

of Ms. Wang's notes concerning the phone call and did not contest that Mr. Linder made this

statement.    While  this  evidence  concerns  only  one  of  the  41  statements  offered  by  the

---

[3] Although the Court believes that this is what Mr. Linder's notes say based on context, the
penmanship is less than clear.  At minimum, however, it is clear that Mr. Linder's notes attribute
a statement about bank covenants to Mr. Acosta, not to Mr. Peavler.

Government, it raises significant doubts about the accuracy of both Ms. Madtson's FD-302 and of her recollections in general.[4]

Third, the cross-examination of Special Agent Madtson was devastating. On numerous occasions—at least 150 by the Court's count—she indicated that she did not have any independent recollection about the Proffer Interview other than what was recorded in her notes or her FD-302.

Based on the foregoing, the Court finds that Special Agent Madtson's FD-302 and notes are not entirely accurate and, in some ways, distort the reality of what was said, and by whom, during the Proffer Interview. The Court further finds that Ms. Wang's "transcript-style" notes, while not a literal transcript and not a perfect representation of what occurred, are more likely than not an accurate reflection of what was said. Accordingly, based on Ms. Wang's notes, the Court has constructed a document representing the contents of Mr. Peavler's proffer statement for the purpose of resolving the Government's Motion in *Limine* and permitting the Government, pursuant to the Proffer Agreement, to introduce statements at trial if Mr. Peavler's presentation of his case triggers the Admissibility Provision ("the Court Constructed Proffer Transcript"). The Court Constructed Proffer Transcript is attached to this Order as **Exhibit 1**.

The Court Constructed Proffer Transcript contains two sections. First, under the heading "Stipulated Statements," is a list of the statements proposed by the Government to which Mr. Peavler did not object. Given the lack of objection, the Court finds that these statements were made and may be admitted by the Government at trial in the event that the Court later finds that Mr. Peavler's trial presentation triggers the Admissibility Provision of the Proffer Agreement.

---

[4] For all of these reasons, the Court specifically finds that the Government has failed to prove by a preponderance of the evidence that Mr. Peavler made the statement identified by the Government as Statement #39.

The second section, under the heading "Court Constructed Transcript of Disputed Statements," is a question-and-answer style "transcript" of Mr. Peavler's statements, based on Ms. Wang's transcript-style notes.  Specifically, the Court finds that the Government's proposed Statements #4, #6, #7, #8, #9, #12, #13, #14, #15, #16, #17, #18, #19, #20, #22, #23, #25, #26, #27, #30, #31, #32, #33, #35, #36, #37, #38, #40, and #41 were made, not as the Government proposed them, but as reflected in Ms. Wang's transcript-style notes.[5]  The Court finds that the Government has failed to prove that Statements #10 and #39 were made, and therefore those statements are not included or accounted for in the Court Constructed Proffer Transcript.

In addition, the Court has removed from the Court Constructed Proffer Transcript all explicit references to Defendant William Eric Meek, in order to protect Mr. Meek's Sixth Amendment rights under *Bruton v. United States*, 391 U.S. 123 (1968).  *See, e.g.*, *United States v. Spagnola*, 632 F.3d 981, 988 (7th Cir. 2011) ("A *Bruton* violation occurs . . . if the confession of a non-testifying co-defendant facially incriminates the non-confessing co-defendant."); *United States v. Green*, 648 F.3d 569, 573 (7th Cir. 2011) ("A *Bruton* violation may be avoided, however, by redacting the reference to the [non-confessing] defendant and substituting a generic reference such as 'another person' or 'another member of the group.'").  The Court's removal of Mr. Meek's name from the Court Constructed Proffer Transcript, however, does not limit Mr. Meek's ability to present *Bruton* arguments in any future hearing concerning his pending Motion to Sever, [Filing No. 191], or at any other appropriate time.

---

[5] For the reasons described above, the Court concludes that the question-and-answer format of Ms. Wang's notes better captures the reality of Mr. Peavler's statements, and therefore has deferred to that format, even where the substance of the Government's proposed statements substantially matches the substance of the question-and-answer exchange reflected in Ms. Wang's notes.

In sum, the Court Constructed Proffer Transcript, including the Stipulated Statements, represents the closed universe of statements that: (1) the Court finds were more likely than not made during the Proffer Interview; and (2) could potentially be introduced by the Government at trial should the Admissibility Provision be triggered.

## IV.
### CONCLUSION

The Court and the parties have repeatedly acknowledged the unusual situation caused by the failure to record the Proffer Interview in this case, and the dispute over who said what during that interview has led to complex and protracted pretrial litigation. The Court could have been spared days of time and work had the Proffer Interview been recorded. But resolving these issues boils down to one rather simple principle: Pursuant to the Proffer Agreement, the Government is entitled to use *Mr. Peavler's own statements* to impeach him or to show a contradiction between what he presents at trial and what he said during the Proffer Interview, but the Government is not entitled to use *its spin on his statements* or statements made by others for that purpose. It is the province of the jury to draw inferences from Mr. Peavler's statements, and the Government may not take it upon itself to perform that function. To that end, the Court has produced the Court Constructed Proffer Transcript, which is attached to this Order as **Exhibit 1**, and represents the closed universe of Mr. Peavler's proffer statements for purposes of the Government's Motion in *Limine*. The Clerk is **DIRECTED** to file Exhibit 1 **UNDER SEAL**. The Government's Motion in *Limine*, [164], is **GRANTED** to the extent that the Court provisionally rules that any statement contained in the Court Constructed Proffer Transcript may be admitted at trial in the event that the Court determines that Mr. Peavler's trial presentation triggers the Admissibility Provision of the Proffer Agreement.

Date: 7/27/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**